UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONAS ROWE,

        Plaintiff,

    v.

HORNBLOWER FLEET,

        Defendant.

Case No. C-11-4979 JCS

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO STRIKE FIRST AMENDED COMPLAINT
[Docket No. 48]

## I.        INTRODUCTION

Defendant Hornblower Yachts, LLC dba Hornblower Cruises and Events ("Hornblower") brings a Motion to Dismiss or in the Alternative Strike ("Motion") seeking dismissal of claims that it asserts are time-barred; it also argues that Plaintiff's request for punitive damages under the Jones Act and on his claim for unseaworthiness should be dismissed or stricken because punitive damages are not available on those claims.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  A hearing on the Motion was held on Friday, November 2, 2012 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II.       BACKGROUND

### A.        The Original Complaint

Plaintiff Jonas Rowe brings a maritime personal injury action against his employer, Hornblower.  He filed the original complaint in this action on October 7, 2011.  In the complaint, he alleged that on October 18, 2008, while working as a Port Engineer at the Port of San Francisco for Hornblower, he was ordered to move a 600-pound maritime transformer and while

United States District Court
Northern District of California

doing so injured his back and suffered nerve damage to his right foot and leg.[1]  Complaint, ¶¶ 7-9.

Based on these factual allegations, Plaintiff asserted two claims:  1) Jones Act Negligence; and 2)

Unseaworthiness under the General Maritime Law.  *Id.*, ¶¶ 11-23.

### B.    The First Amended Complaint

In his amended complaint, Plaintiff added the following factual allegations regarding

events that occurred after the October 18 injury:

> Thereafter, Rowe was working in the confined space of the aft lazarette with tools provided by the employer on the M/V SUNSET.  The space was confined and the vessel was in an unseaworthy condition as the tube providing air to the engine from the air compressor was too small to provide adequate air to the engine for starting.  As a result of this unseaworthy condition, Rowe was required to replace the tube with a larger one with inadequate tools.  In doing so while turning the fasteners with rusty tools, he further aggravated his back.

First Amended Complaint ("FAC"), ¶ 8; *see also* FAC, ¶ 9 ("Rowe injured his back and

other areas of his body as a result of his attempt to move the transformer *and aggravated

it while working on the M/V SUNSET*") (emphasis added).  In addition, Rowe added a

claim for maintenance and cure to the original claims for Jones Act Negligence and

Unseaworthiness.  *Id.,* ¶¶ 24-27.   In his maintenance and cure claim, Plaintiff alleges

that because he was injured in the course and scope of his employment as a seaman, he is

entitled to maintenance and cure for his medical expenses.  *Id.*, ¶ 25-26.  He further

alleges as part of his maintenance and cure claim that Hornblower has not only refused

to pay maintenance and cure but has also "changed, altered, and not recorded Plaintiff's

time aboard Defendants['] group of vessels, so [as] to make it appear that Plaintiff does

not have the requisite time aboard and in service of Defendants' vessels"  to qualify as a

Jones Act seaman.  *Id.*, ¶ 27.

Finally, Plaintiff added a request for punitive damages on the basis that

Hornblower: 1) willfully failed to pay maintenance and cure;  2) "failed and deliberately

altered, and failed to record Plaintiff's time aboard and in the service of Defendants'

---

[1] Hereinafter, the Court refers to this injury as "the October 18 injury."

United States District Court
Northern District of California

United States District Court
Northern District of California

1   vessels . . . and willful[ly] and wanton[ly] disregard[ed] . . .[P]laintiff's rights as a Jones

2   Act seaman;" and 3) failed to provide a seaworthy vessel.  *Id.*, ¶¶ 28-30.

3       **C.     The Motion**

4       In the Motion, Hornblower asks the Court to dismiss under Fed.R.Civ.P. 12(b)(6), or in

5   the alternative, strike under Fed. R. Civ. P. 12(f), Plaintiff's claims to the extent that they are

6   based on the injury that occurred on the M/V SUNSET because those claims are time-barred.

7   Motion at 4-6.  In particular, Hornblower asserts that the allegations in the First Amended

8   Complaint as to the later injury do not relate back to the allegations in the original complaint

9   regarding the October 18 injury and therefore are barred under the three-year statute of limitations

10  that applies to maritime personal injury claims.  *Id.* at 4-5.[2]  According to Hornblower, this is

11  because the allegations concerning the later injury are not based on the same operative facts as

12  those concerning the October 18 injury but rather involve a "completely new accident for which

13  [P]laintiff is alleging entirely different liability theories."  *Id.* at 6.

14      Hornblower also asserts that Plaintiff's request for punitive damages under the Jones Act

15  and on Plaintiff's claim for unseaworthiness should be dismissed because punitive damages are

16  not available on those claims.   Motion at 6-10.  According to Hornblower, it is a matter of black-

17  letter law that punitive damages are not available on claims asserted under the Jones Act.  *Id.* at 8.

18  Hornblower further asserts that under the Supreme Court's decision in *Miles v. Apex Marine*

19  *Corp.*,  498 U.S. 19 (1990), punitive damages are not available on unseaworthiness claims, even

20  though the Ninth Circuit reached a contrary result in a case that predates *Miles*, *Evich v. Morris*,

21  819 F.2d 256 (9th Cir. 1987), *cert. denied*, 484 U.S. 914 (1987).  *Id.* at 10-15.

22      In support of the Motion, Hornblower also files a Request for Judicial Notice

23  ("Hornblower RJN") asking the Court to take judicial notice under Rule 201 of the Federal Rules

24  of Evidence of an Order Approving Compromise and Release, signed by Workers' Compensation

25  _____

26  [2] Hornblower cites 46 U.S.C. § 30106, which establishes a three-year limitation period for Jones
    Act claims, noting that while there is no federal statute of limitations applicable to admiralty

27  actions for unseaworthiness or maintenance and cure, courts have held, based on the Supreme
    Court's decision in *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221 (1958), that where such

28  claims are asserted in an action in which a Jones Act claim also is asserted, the applicable statute
    of limitations is three years.  *Id.* at 5.

1  Judge Joan M. Succa in the case *Rowe v. Hornblower Cruises* (Case numbers ADJ-8499367 and

2  ADJ-8499606), attaching the Compromise and Release signed by Jonas Rowe.  The Compromise

3  and Release reflects that Plaintiff sustained an injury on October 17, 2008 in an accident that

4  occurred at 200 Marina Boulevard, in Berkeley, and another injury on October 20, 2008 in an

5  accident on the M/V SUNSET.  Hornblower RJN, Ex. A.   For each of the injuries, the box on the

6  form for "specific injury" is checked, rather than the box for "cumulative injury."  On the basis of

7  the Compromise and Release, Hornblower asks the Court to take judicial notice that:

> 1. The plaintiff admits that he sustained a "specific injury" on October 17, 2008 and
> that the injury occurred at 200 Marina Blvd;
> 2. The plaintiff admits that he suffered a different "specific injury" three days later,
> occurring on October 20, 2008 "on the vessel SUNSET, Berkeley Marina"; and
> 3. The plaintiff didn't claim that those injuries were cumulative or the second an
> aggravation of the first.

12  Hornblower RJN at 1.  Hornblower contends that courts may properly take judicial notice of

13  worker compensation proceedings, citing *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203 (9th

14  Cir. 1995), *rev'd on other grounds*, 520 U.S. 548 (1997) and *Small v. Avanti Health Systems*, 661

15  F.3d 1180 (9th Cir. 2011).  *Id.* at 2.

16       In his Opposition, Plaintiff argues that to the extent Hornblower seeks dismissal of

17  Plaintiff's claims under Rule 12(f), its Motion is improper because the material Hornblower asks

18  the Court to strike is not "redundant, immaterial, impertinent, or scandalous" and is not an

19  "insufficient defense."  Opposition at 1 (citing Fed.R.Civ. P. 12(f);  *Yamamoto v. Omiya*, 564

20  F.2d 1319, 1327 (9th Cir. 1977)).   Plaintiff further contends that none of his claims are time-

21  barred because: 1) as to the maintenance and cure claim, there is no statute of limitations and such

22  claims may only be barred under the doctrine of laches; 2)  Plaintiff's claims relate back to the

23  original complaint because "[t]he injury that occurred on the M/V SUNSET was a continuation of

24  his previous work day injury moving the transformer."

25       To show that the new allegations relate back to those in the original complaint, Plaintiff

26  cites longshore compensation documents, and in particular, the Application for Settlement

27  Approval Pursuant to 33 U.S.C. § 908(i) ("the 8(i)"), for which he requests judicial notice.  *Id.* at

28  5-6; *see also* Request for Judicial Notice in Support of Opposition to Motion to Dismiss or, in the

Alternative, Motion to Strike First Amended Complaint ("Plaintiff's RJN").  According to

Plaintiff, these documents establish that Defendants "clearly had fair notice of the correlation

between the initial injury from moving the transformer and the continuation of the injury on his

next working day while working on the piping aboard the M/V Sunset."  *Id*. at 5-6.  The

Application for Settlement Approval, signed by both parties, includes the following description of

Plaintiff's injury:

> Claimant is alleging that on October 17, 2008, while moving a 600-pound transformer
> during the course and scope of his employment with Hornblower Cruises and Events, he
> experienced back pain. . . .This event did not disable him immediately, and he was able to
> continue working at full duty.  On October 20, 2008, Claimant was installing piping
> aboard the vessel SUNSET, when he alleges that he felt severe pain that forced him to lie
> down on the dock. . . . Claimant alleges that he suffered a lumbar spine injury, with nerve
> damage and parasthesias into his right leg, resulting in a drop foot.

Plaintiff's RJN, Ex. A at 5.

Plaintiff also rejects Hornblower's contention that his request for punitive damages should

be dismissed or stricken.  Opposition at 7-13.   Plaintiff states that he is seeking punitive damages

for: 1) Defendant's "willful and callous failure to pay maintenance and cure:" 2) "[u]nder general

maritime law, . . . Defendant's deliberate, arbitrary, capricious and willful failure to properly

record Plaintiff's time aboard Defendant's vessel;" and 3) "[u]nder general maritime law, . . .for

the unseaworthiness of the M/V Sunset."  *Id*. at 7.   He points out that Hornblower conceded in its

moving papers that under *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009),  punitive

damages may be awarded for a willful and callous failure to pay maintenance and cure.  *Id*. n. 5.

Further, he contends that the rule that punitive damages are not available on Jones Act claims

does not apply because he is not seeking "punitive damages for 'Jones Act negligence,'" as

Hornblower contends, but rather, is seeking punitive damages for Hornblower's failure to

properly maintain Plaintiff's employment records, which undermines Plaintiff's ability to

establish that he is a "seaman" for the purposes of establishing a claim under the Jones Act.  *Id*. at

7-8.  Because the Jones Act does not define "seaman," Plaintiff asserts, his request for punitive

damages falls under the general maritime law and is not barred.

United States District Court
Northern District of California

Plaintiff also argues that punitive damages are available on claims of unseaworthiness. In support of his position, Plaintiff asserts that while some courts interpreted *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) as severely limiting the availability of punitive damages under general maritime law, including on claims for unseaworthiness, the Supreme Court made clear in *Atlantic Sounding* that lower courts had taken an overly broad interpretation of the *Miles* decision. *Id.* at 10-11. In light of the Court's instruction in *Atlantic Sounding*, Plaintiff asserts, it is clear that *Miles* did not overrule the Ninth Circuit's holding in *Evich* that punitive damages may be awarded on an unseaworthiness claim. *Id.* at 10-11 (citing *Barrett v. Jubilee*, 2011 WL 3516061 (W.D.Wash., August 11, 2011); *Wagner v. Kona Blue Water Farms*, 2010 WL 3566731 (D.Hawai'i, Sept. 13, 2010); *In re Osage Marine Services, Inc.*, 2012 WL 709188 (E.D.Mo., March 5, 2012)).

In its Reply, Hornblower reiterates its position that the allegations regarding the injury on the M/V Sunset do not relate back to the original allegations. Reply at 2. It rejects Plaintiff's position that the later alleged injury was merely a continuation of the earlier one and points out that although Plaintiff states in his Opposition that the second injury occurred the next day, he later acknowledges that the injuries occurred three days apart. *Id.* These injuries are alleged as separate events, Hornblower contends, and reliance on documents from the longshore case does support Plaintiff's position because the relevant inquiry in determining whether new allegations relate back is whether the allegations in the *complaint* provided sufficient notice of the claims alleged in the amended complaint. *Id.* at 4. Hornblower further asserts that the terms of the Application for Settlement Approval preclude Plaintiff from relying on that document in this action but that even if the Court were to consider it, it supports the conclusion that the injuries were two separate injuries. *Id.* at 4-5.[3]

Hornblower challenges Plaintiff's position that punitive damages are available on a claim for unseaworthiness, arguing that under *Miles*, such damages are unavailable and that the Supreme Court's clarification of *Miles* in *Atlantic Sounding* does not change that result. *Id.* at 5.

---

[3] Hornblower does not address Plaintiff's argument that the three-year statute of limitations does not apply to a claim for maintenance and cure. Nor does it address whether the doctrine of laches bars that claim.

Under these cases, Hornblower asserts, the relevant question is whether "the cause of action for unseaworthiness and the right to punitive damages arising out of that cause of action existed before the Jones Act was passed." *Id.* According to Hornblower, the answer to that question is "no." *Id.* Hornblower further asserts, as it did in its Motion, that the Ninth Circuit's decision in *Evich* – holding that punitive damages were available on a claim for unseaworthiness – was overruled by *Miles. Id.* at 9-10. Hornblower argues that the district court cases cited by Plaintiff for the proposition that punitive damages are available on a claim for unseaworthiness, *Barrette*, *Osage* and *Wagner*, are not binding on this Court and moreover, were wrongly decided. *Id.* at 10-11.

Finally, Hornblower argues that Plaintiff's claim for punitive damages under the Jones Act should be dismissed because, to the extent Plaintiff has asked for punitive damages for Hornblower's alleged "arbitrary, capricious, willful and wanton disregard of [P]laintiff's rights as a Jones Act seaman," this request clearly violates the rule that punitive damages are not available for claims asserted under the Jones Act. *Id.* Furthermore, Hornblower asserts, Plaintiff's attempt to create a "new general maritime law claim for failure to create and maintain certain types of employment records – and the right to seek punitive damages for the failure to do so," should be rejected on the basis that Plaintiff has offered no authority for the existence of such a claim. *Id.* at 12-14.

Hornblower objects to Plaintiff's request for judicial notice because the Application for Settlement Approval of which Plaintiff seeks judicial notice specifically states that it is not to be used in other proceedings. Hornblower's Opposition to the Plaintiff's Request for Judicial Notice at 1-2 (citing Application for Settlement Approval, ¶ 11, stating that "[t]hese stipulations are not applicable to any other causes of action that might be brought by Claimant" and [t]his settlement agreement may only be used in other actions brought by this claimant to the extent necessary for Respondents [Hornblower's Longshore Insurance] to recoup lien payments as set forth herein").

At the Motion hearing, Hornblower stipulated that the timeliness of a claim for maintenance and cure is governed by the doctrine of laches, rather than the three-year statute of

1    limitations that applies to claims for unseaworthiness, and that under that doctrine, it is the

2    defendant's burden to establish that a claim is untimely.   Hornblower also stipulated that punitive

3    damages are available on claims for maintenance and cure and that before 1920, punitive damages

4    were *generally* available on maritime claims.    Plaintiff stipulated at the hearing that he is not

5    seeking punitive damages under the Jones Act.

6    **III.     ANALYSIS**

7          **A**.     **Legal Standard**

8                **1.      Rule 12(b)(6)**

9          A complaint may be dismissed for failure to state a claim for which relief can be granted

10   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The

11   purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

12   complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Thus, in

13   ruling on a motion to dismiss under Rule 12(b)(6), the court  takes "all allegations of material fact

14   as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of*

15   *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Generally, a plaintiff's burden at the

16   pleading stage is relatively light.  Under Rule 8(a) of the Federal Rules of Civil Procedure, "[a]

17   pleading that states a claim for relief must contain. . . a short and plain statement of the claim

18   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Nonetheless, a complaint

19   may be dismissed based on a lack of a cognizable legal theory or on the absence of facts that

20   would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

21   1990).  The Supreme Court has made clear that a complaint must "contain either direct or

22   inferential allegations respecting all the material elements necessary to sustain recovery under

23   some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car*

24   *Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  Further, the court is "not

25   bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 555 (quoting

26   *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

27               **2.      Rule 12(f)**

28

United States District Court
Northern District of California

8

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any

pleading "an insufficient defense or any redundant, immaterial, impertinent or scandalous

matter."  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money

that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."

*Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations

omitted; citations omitted).  However, motions to strike are generally disfavored.  5C Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004).   A Rule

12(f) motion is not a proper method to procure dismissal of all or part of a complaint or

counterclaim.  *Id.;  see also Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002,

1020-21 (N.D.Cal. 2009) ("[t]he proper medium for challenging the sufficiency of factual

allegations in a complaint is through Rule 12(b)(6) not Rule 12(f)" (citations omitted)).

### B.        Requests for Judicial Notice

Both Plaintiff and Defendant ask the Court to take judicial notice of documents from the

federal administrative law proceeding regarding Plaintiff's claims under the Longshore and

Harbor Workers Compensation Act.  Hornblower requests that the Court take judicial notice of

the Order Approving Compromise and Release, as well as the attached Compromise and Release

signed by Plaintiff and his counsel.  It also requests that the Court take judicial notice of certain

facts contained in these documents that Hornblower contends constitute admissions on Plaintiff's

part.   Plaintiff requests that the Court take judicial notice of  the Compensation Order - Approval

of Settlement from the U.S. Department of Labor – Office of Workers' Compensation Program,

as well as the attached Application for Settlement Approval Pursuant to 33 U.S.C. § 908(i)

prepared and signed by Defendant's counsel and also signed by Plaintiff and Plaintiff's counsel.

Under Rule 201 of the Federal Rules of Evidence, "[j]udicial notice is properly taken of

orders and decisions made by other courts or administrative agencies."   *See Papai v. Harbor Tug*

*& Barge Co*., 67 F.3d 203, 207 n.5 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S. 548 (1997);

*see also Intri-Plex Technologies, Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1052 (9th Cir.  2007)

("a court may take judicial notice of matters of public record without converting a motion to

dismiss into a motion for summary judgment, as long as the facts noticed are not subject to

reasonable dispute.").  On this ground, and because Plaintiff has not objected to Hornblower's request for judicial notice of the Order Approving Compromise and Release and the attached Compromise and Release, the request is GRANTED as to those documents.  However, the Court DENIES Hornblower's request that the Court take judicial notice of certain facts contained in those documents on the basis that they constitute admissions on Plaintiff's part (see above).  As it is not clear that these facts are undisputed, it is not appropriate for the Court to take judicial notice of them.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that while district court could take judicial notice of the fact of an extradition hearing and the fact that a waiver of extradition was signed at the hearing, it erred in taking judicial notice that there had been a valid waiver and dismissing claims on that basis because in doing so, "the court did more than take judicial notice of undisputed matters of public record. The court took judicial notice of disputed facts stated in public records.").

With respect to the documents for which Plaintiff seeks judicial notice, Hornblower has filed an objection  on the basis that the parties agreed that these documents could not be used in other proceedings except under limited circumstances not applicable here.  The Court does not rely on these documents in deciding the Motion because they would not change its decision.  Therefore, it declines to rule on Plaintiff's request for judicial notice.

### C.  Whether the Claims Arising from the Subsequent Accident are Time-Barred

#### 1.  Applicable Limitations Periods

Plaintiff asserts claims for Jones Act negligence, unseaworthiness and maintenance and cure, all based on injuries he allegedly suffered while employed by Hornblower.  To determine whether the allegations relating to the injury that occurred on the M/V Sunset are time-barred, the Court first must address the applicable limitation period for each of these claims.

The Jones Act prescribes a three-year limitation period for filing suit, running from the date upon which the cause of action accrued.  45 U.S.C. § 56.  Thus, Plaintiff's Jones Act negligence claim is subject to a three-year statute of limitations.

Plaintiff's unseaworthiness claim arises under the general maritime law and is governed by the Uniform Statute of Limitations for Maritime Torts enacted by Congress in 1980, which

1    provides that "a civil action for damages for personal injury . . . arising out of a maritime tort

2    must be brought within 3 years after the cause of action arose."   46 U.S.C. § 30106;   *see also*

3    *Huseman v. Icicle Seafoods, Inc.*, 2004 WL 5571430, at *1 (W.D.Wash., July 6, 2004), *rev'd in*

4    *part on other grounds,* 471 F.3d 1116 (9th Cir. 2006) (unseaworthiness claim governed by three-

5    year uniform limitations period).   Therefore, Plaintiff's unseaworthiness claim, like his Jones Act

6    claim, is subject to a three-year limitations period.

7         Courts are split as to whether the Uniform Statute of Limitations for Maritime Torts  also

8    applies to maintenance and cure claims.  *See Ferris v. Veco Inc.* 896 F. Supp. 966967 n. 1 (D.

9    Alaska 1995).  At least one court has held that the uniform limitation does apply to maintenance

10   and cure claims, noting that when Congress enacted the uniform limitation provision, it stated that

11   that provision  "'would apply a specific 3-year statute of limitations to those maritime tort actions

12   currently governed by the doctrine of laches.'"  *Chacon-Gordon v. M/V Eugenio "C"*, 1987 WL

13   17693, at *1 (S.D.Fla., April 30, 1987) (quoting H.R. Rep. No. 737, 96th Cong., 2d Sess. 1,

14   reprinted in 1980 U.S. Code Cong. & Admin. News 3303, 3305).   The court reasoned that

15   because maintenance and cure claims had been governed by the doctrine of laches prior to the

16   enactment of the Uniform Statute of Limitations for Maritime Torts, Congress intended that the

17   uniform three-year statute of limitations would apply to maintenance and cure claims.  *Id*.  Other

18   courts have rejected such reasoning.   *See, e.g., Reed v. American S.S. Co.,* 682 F.Supp. 333

19   (E.D.Mich.,1988).

20        The Ninth Circuit has not directly addressed whether Congress intended the Uniform

21   Statute of Limitations for Maritime Torts to apply to maintenance and cure claims.  In *Huseman*

22   *v. Icicle Seafoods, Inc*., however, it stated that "[l]aches is an equitable affirmative defense

23   available for actions that do not have a specific applicable statute of limitations, such as

24   Huseman's maintenance and cure claim."  471 F.3d 1116, 1125 (9th Cir. 2006).

25        Here, Hornblower has stipulated that the doctrine of laches applies to Plaintiff's

26   maintenance and cure claim and therefore, for the purposes of deciding the instant Motion, the

27   Court assumes that the doctrine of laches rather than the three-year statute of limitations applies.

28   Further, Hornblower has not demonstrated that Plaintiff's delay in amending his complaint caused

United States District Court
Northern District of California

11

it to suffer any prejudice.  Because it is Hornblower's burden to establish that the doctrine of laches applies, Hornblower has failed to show that Plaintiff's maintenance and cure claim is time-barred to the extent it is based on the injury on the M/V Sunset.

### 2.    Whether the Allegations in the Amended Complaint Relate Back

Because the claims for Jones Act negligence and unseaworthiness are governed by three-year limitations periods, those claims are barred to the extent they are based on the alleged events on the M/V Sunset –which occurred over three years before he filed his amended complaint – unless the new allegations relate back to those in the original complaint.  The Court finds that they do not.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(B).  To determine whether this standard is met, courts "consider whether the original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question."  *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989).  One way to determine whether this standard is met is to "compare[] the original complaint with the amended complaint and decide[] whether the claim to be added will likely be proved by the same kind of evidence offered in support of the original pleading."  *Percy v. San Francisco General Hosp.,* 841 F.2d 975, 978 (9th Cir. 1988).

Here, Plaintiff alleges facts relating to a distinct accident that occurred on a different day, in a different location.  To prove that this later injury was the result of negligence or unseaworthiness, Plaintiff will be required to present different evidence than will be used to establish that the earlier injury resulted from either negligence or unseaworthiness.  The Court concludes that the allegations about the events on the M/V Sunset do not relate back to the original complaint and therefore dismisses Plaintiff's claims for Jones Act negligence and unseaworthiness to the extent they are based on those events.

United States District Court
Northern District of California

**D**.   **Whether Punitive Damages are Available**

    **1.**   **Unseaworthiness Claim**

Hornblower seeks dismissal of Plaintiff's request for punitive damages on his claim for unseaworthiness, arguing that the Ninth Circuit's decision holding that such damages are available, *Evich v. Morris*, 819 F.2d 256 (9th Cir. 1987), is no longer good law in light of the Supreme Court's decision in *Miles v. Apex Marine Corp*., 498 U.S. 19 (1990).  The Court disagrees.

In deciding whether *Evich* remains good law in light of the Supreme Court's decision in *Miles*, the Court must determine whether *Miles* "undercuts the theory or reasoning underlying [*Evich*] in such a way that the cases are clearly irreconcilable."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).  In *Miller*, the Ninth Circuit clarified prior circuit precedent on the question of how closely on point the decision of the court of last resort must be for a district court to disregard a prior panel decision, holding "that the issues decided by the higher court need not be identical in order to be controlling."  *Id*.  Thus, this Court must examine the reasoning and holdings of *Evich* and *Miles*  – as well as the guidance recently provided by the Supreme Court in *Atlantic Sounding* as to the significance of *Miles* – to determine whether it is bound by *Evich*.  Before addressing these decisions, the Court briefly addresses the history and policies underlying the unseaworthiness claim.

    **a.**   **The History of Unseaworthiness Claims**

"The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that a vessel and its appurtenant equipment and appliances are 'reasonably fit for her intended service.'" *Wagner v. Kona Blue Water Farms, LLC*, 2010 WL 3566731 (D. Hawai'i Sept. 13, 2010) (*quoting Usner v. Luckenbach Overseas Corp*., 400 U.S. 494, 499 (1971)).  In *Seas Shipping Co. v. Sieracki*, the Supreme Court explained that a claim for unseaworthiness is based on the "hazards of marine service which unseaworthiness places on the men who perform it." 328 U.S. 85, 93 (1946).  The Court explained, "[t]hese, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone the resulting personal disability and loss, have been thought to justify and to require putting their

burden, in so far as it is measurable in money, upon the owner regardless of his fault." *Id*.  The

Court reasoned further that imposing such strict liability on the owner is warranted because the

risks of unseaworthiness are "avoidable by the owner to the extent that they may result from

negligence [ ] [a]nd beyond this he is in position, as the worker is not, to distribute the loss in the

shipping community which receives the service and should bear its cost." *Id*.

The origins of the unseaworthiness claim were addressed in *Mahnich v. Southern S. S.

Co*., 321 U.S. 96, 99 (1944).  In that case, the Court held "that the admiralty rule that the vessel

and owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel or

its appurtenant appliances and equipment, has been the settled law since this Court's ruling to that

effect in *The Osceola*."  321 U.S. 96, 99 (1944) (citing *The Osceola*, 189 U.S. 158, 174-175

(1903) (stating that "the law may be considered as settled  . . . [t]hat the vessel and her owner are,

both by English and American law, liable to an indemnity for injuries received by seamen in

consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the

proper appliances appurtenant to the ship").   According to the *Mahnich* Court, "[t]he latter rule

seems to have been derived from the seaman's privilege to abandon a ship improperly fitted out,

and was generally applied, before its statement in *The Osceola*, . . . by numerous decisions of the

lower federal courts during the last century." *Id*. (citations omitted).  As explained by the

Supreme Court in *The Arizona v. Anelich*, that privilege was recognized as early as 1789.  298

U.S. 110, 121 n. 2 (1936).

While *Mahnich* recognized that liability for unseaworthiness was well-established as early

as 1903, however, subsequent decisions by the Supreme Court have made clear that strict liability

for unseaworthiness was a departure from prior maritime law, which required that a plaintiff

seeking to recover on a theory of unseaworthiness establish a lack of due diligence.  *See Moragne

v. States Marine Lines, Inc.*, 398 U.S. 375, 398 (1970).  In *Moragne*, the Court described the

evolution of the unseaworthiness claim as follows:

> . . .[T]he substantive duties imposed at [the time when the Jones Act was enacted] by
> general maritime law were vastly different from those that presently exist. "(T)he
> seaman's right to recover damages for injuries caused by unseaworthiness of the ship was
> an obscure and relatively little used remedy," perhaps largely because prior to this Court's
> decision in *Mahnich v. Southern S.S. Co*., 321 U.S. 96. 64 S.Ct. 455, 88 L.Ed. 561 (1944),

the shipowner's duty was only to use due diligence to provide a seaworthy ship. Gilmore & Black, supra, at 315, 361; Tetreault, Seamen, Seaworthiness, and the Rights of Harbor Workers, 39 Cornell L.Q. 381, 392-393, 396 (1954). Nonseamen on the high seas could generally recover for ordinary negligence, but even this was virtually denied to seamen under the peculiar maritime doctrine of *The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903). Congress in 1920 thus legislated against a backdrop of state laws that imposed a standard of behavior generally the same as – and in some respects perhaps more favorable than – that imposed by federal maritime law.

Since that time the equation has changed drastically, through this Court's transformation of the shipowner's duty to provide a seaworthy ship into an absolute duty not satisfied by due diligence. *See, e.g., Mahnich v. Southern S.S. Co., supra*; *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). The unseaworthiness doctrine has become the principal vehicle for recovery by seamen for injury or death, overshadowing the negligence action made available by the Jones Act, see Gilmore & Black, *supra*, at 315-332; and it has achieved equal importance for longshoremen and other harbor workers to whom the duty of seaworthiness was extended because they perform work on the vessel traditionally done by seamen. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

*Id.*; *see also Miles v. Apex Marine*, 498 U.S. 19, 25 (1990) ("The revolution in the law began with *Mahnich v. Southern S.S. Co.*, 321 U.S. 9, 64 S.Ct. 455, 88 L.Ed. 561 (1944) in which this Court transformed the warranty of seaworthiness into a strict liability obligation . . . As a consequence of this radical change, unseaworthiness became the principal vehicle for recovery by seamen for injury or death") (citations omitted).

> **b.  *Evich***

In *Evich*, the Ninth Circuit held that punitive damages are available under general maritime law on claims for unseaworthiness even though punitive damages are not available under the Jones Act. 819 F.2d at 258.   The court reasoned as follows:

Punitive damages are available under general maritime law for claims of unseaworthiness, *In re Merry Shipping, Inc.*, 650 F.2d 622, 625 (5th Cir.1981); *In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972), and for failure to pay maintenance and cure, *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1051-52 (1st Cir.1973). See generally *Protectus Alpha Navigation Co., Ltd. v. North Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir.1985). While punitive damages are not available under the Jones Act, *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560-61 (9th Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985), it does not follow that they are unavailable under general maritime law.  *In re Merry Shipping, Inc.*, 650 F.2d at 626.

15

Punitive damages serve the purposes "'of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example.'" *Protectus Alpha Navigation Co., Ltd.*, 767 F.2d at 1385 (quoting Prosser, The Law of Torts § 2 at 9 (1971)). These purposes support their availability in general maritime law and the trend is to allow such recoveries. 2 M. Norris, The Law of Seamen § 30:41 at 517 (4th ed. 1985); cf. *Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 62-63 (2d Cir.1985) (not available in contract). We find that punitive damages are available in a general maritime survival action upon a showing of "conduct which manifests 'reckless or callous disregard' for the rights of others, . . . or 'gross negligence or actual malice criminal indifference.'" *Protectus Alpha Navigation Co., Ltd.*, 767 F.2d at 1385 (citations omitted). It is for the trier of fact to determine whether they are warranted. *See In re Merry Shipping, Inc.*, 650 F.2d at 626-27.

*Id.*

### c.    *Miles*

In *Miles v. Apex*, the Court addressed whether the family of a seaman could recover damages for loss of society in a wrongful death action brought as either a Jones Act claim or a general maritime law unseaworthiness claim.  498 U.S. at 21.  The Court held that it could not recover such non-pecuniary damages on the general maritime claim because such damages were precluded under the Jones Act.  *Id.*  The Court reasoned as follows:

> The Jones Act also precludes recovery for loss of society in this case. The Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss. The general maritime claim here alleged that Torregano had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

*Id.* at 32-33.   The Court acknowledged that there were "strong policy arguments" for allowing such recovery but concluded, "[w]e sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them." *Id.* at 36.

In the wake of *Miles*, many courts – including district courts in this Circuit – concluded that because punitive damages are non-pecuniary, they too were unavailable on unseaworthiness claims.  *See, e.g., Horsley v. Mobil Oil Co.*,15 F.3d 200 (1st Cir.1994); *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1454-59 (6th Cir.1993); *La Voie v. Kualoa Ranch & Activity Club, Inc.*, 797 F.Supp. 827, 829-31(D.Hawai'i 1992); *Ortega v. Oceantrawl, Inc.*, 822

16

F.Supp. 621, 623-24 (D.Alaska 1992); *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294 (Tex.1993) (per curiam); *Sky Cruises, Ltd. v. Andersen*, 592 So.2d 756 (Fla.App.) (per curiam), *rev. denied*, 601 So.2d 551 (Fla.), *cert. denied*, 506 U.S. 975 (1992).

### d. *Atlantic Sounding*

In *Atlantic Sounding*, the Court held that an injured seaman could recover punitive damages on a maintenance and cure claim. 557 U.S. at 408-409. The Court began its analysis by looking at the history of punitive damages. First, it noted that "[p]unitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct." *Id*. at 409. The Court further found that "[t]he general rule that punitive damages were available at common law extended to claims arising under federal maritime law," citing a case decided in 1818, *The Amiable Nancy*, 3 Wheat. 546, 4 L.Ed. 456, involving maritime trespass, as one of the Court's "first cases indicating that punitive damages were available." *Id*. According to the Court, "[t]he lower courts followed suit, finding that punitive damages were available in maritime actions for tortious acts of a particularly egregious natures." *Id*. at 411. The Court continued, "[n]othing in maritime law undermines the applicability of this general rule in the maintenance and cure context." *Id*. at 412. The Court pointed to two lower court decisions authored by Justice Story recognizing the right to receive maintenance and cure in this country. *Id*. at 413 (citing *Harden v. Gordon*, 11 F. Cas. 480 (No. 6,047) (CC Me. 1823); *Reed v. Canfield*, 20 F. Cas. 426 (No. 11,641) (CC Mass. 1832)). It also found that "the failure of a vessel owner to provide proper medical care for seamen has provided the impetus for damages awards that appear to contain at least some punitive element." *Id*. at 414 (citing *The City of Carlisle*, 39 F. 807, 809, 817 (DC Ore. 1889), in which "the court added $1,000 to its damages award to compensate an apprentice seaman for 'gross neglect and cruel maltreatment of the [seaman] since his injury'"; and citing *The Troop*, 118 F. 769, 770–771, 773 (D.C.Wash.1902), "explaining that $4,000 was a reasonable award because the captain's 'failure to observe the dictates of humanity' and obtain prompt medical care for an injured seaman constituted a 'monstrous wrong'"). The Court acknowledged in a footnote, however, that neither of these cases referred to "punitive" or "exemplary" damages. *Id*. at 414 n. 3.

United States District Court
Northern District of California

17

Based on its review of the history of punitive damages in the maritime context, the Court found three settled legal principles that were central to resolving the issue in *Atlantic Sounding*:

> First, punitive damages have long been available at common law. Second, the common-law tradition of punitive damages extends to maritime claims. And third, there is no evidence that claims for maintenance and cure were excluded from this general admiralty rule. Instead, the pre-Jones Act evidence indicates that punitive damages remain available for such claims under the appropriate factual circumstances. As a result, respondent is entitled to pursue punitive damages unless Congress has enacted legislation departing from this common-law understanding.

*Id*. at 414-415.  The Court then addressed whether the Jones Act overturned the common law rule allowing for punitive damages.  *Id*. at 1415.  The Court found that it did not, reasoning that "Congress enacted the Jones Act primarily to overrule *The Osceola*, . . . in which this Court prohibited a seaman or his family from recovering for injuries or death suffered due to his employers' negligence." *Id*.  In doing so, the Court explained, Congress "created a statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure." *Id*. In support of this conclusion it pointed to Section 30104 of the Jones Act, which "bestows upon the injured seaman the right to 'elect' to bring a Jones Act claim, thereby indicating a choice of actions for seamen—not an exclusive remedy." *Id*. at 416.  The Court found further support for its conclusion in its own past decisions recognizing that the Jones Act "was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty [and that its] purpose was to enlarge that protection, not to narrow it." *Id*. (citations omitted).  In short, the Court concluded, "[n]othing in the text of the Jones Act or this Court's decisions issued in the wake of its enactment undermines the continued existence of the common-law cause of action providing recovery for the delayed or improper provision of maintenance and cure." *Id*. at 416-417.

The Court went on to address the significance of *Miles*, rejecting the petitioner's assertion that under that decision, punitive damages on claims for maintenance and cure were unavailable because no such damages are permitted under the Jones Act. *Id*. at 418.  The Court stated that the petitioner's "reading of *Miles* is far too broad." *Id*. at 419.  The Court stated:

> *Miles* does not address either maintenance and cure actions or the availability of punitive damages. The decision instead grapples with the entirely different question whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness.  By providing a remedy for wrongful death suffered on the high seas or in territorial waters, the Jones Act and [Death on the High Seas Act ("DOHSA")] displaced a general maritime rule that denied any recovery for wrongful death. . . This Court, therefore, was called upon in *Miles* to decide whether these new statutes supported an expansion of the relief available under pre-existing general maritime law to harmonize it with a cause of action created by statute.

*Id*.  The Court further explained that in *Miles*, it found that the remedies available for a wrongful death action were limited by Congress's judgment, as reflected in the Jones Act and DOHSA, because Congress both created the wrongful death action and chose to limit the damages available on such an action.  *Id*.  Under those circumstances, it would have been "illegitimate to create common-law remedies that exceeded those remedies statutorily available under the Jones Act and DOHSA."  *Id*.

The Court in *Atlantic Sounding* explained that in contrast to *Miles*, "both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act."   Further, the Court noted, "unlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy [and therefore] [i]t is possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which 'Congress has spoken directly.'"  *Id*. at 420-421 (quoting *Miles*, 498 U.S. at 31).

The Court also rejected the petitioner's argument that "*Miles* precludes *any* action or remedy for personal injury beyond that made available under the Jones Act," stating that this argument was directly rejected in *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001).  *Id*. at 421.  In that case, the Court explained, it "recognized a maritime cause of action for wrongful death attributable to negligence although neither the Jones Act (which applies only to seamen) nor DOHSA (which does not cover territorial waters) provided for such a remedy."  *Id*. The Court in *Atlantic Sounding* pointed to its statement in *Norfolk Shipping* that while it "will be the better course, in many cases that assert new claims beyond what those statutes have seen fit to

allow to leave further development to Congress," in that case the cause of action "was 'new only in the most technical sense' because '[t]he general maritime law has recognized the tort of negligence for more than a century, and it has been clear since *Moragne* that breaches of a maritime duty are actionable when they cause death, as when they cause injury.'" *Id.* (citing *Norfolk Shipping*, 532 U.S. at 820). Thus, in *Norfolk Shipping*, "[t]he Court . . . found that 'Congress's occupation of this field is not yet so extensive as to preclude us from recognizing what is already logically compelled by our precedents.'" *Id.*

The Court concluded that because maritime law has recognized for more than a century the duty of maintenance and cure "and the general availability of punitive damages," and because "respondent does not ask this Court to alter statutory text  or 'expand' the general  principles of maritime tort law, *Miles* does not require us to eliminate the general maritime remedy of punitive damages for the willful or wanton failure to comply with the duty to pay maintenance and cure." *Id.* at 422.

### e.    *Wagner, Barrette* and *Osage*

Following the Supreme Court's decision in *Atlantic Sounding*, a number of district courts have concluded that *Miles* does not preclude an award of punitive damages on unseaworthiness claims.  For example, in *In re Complaint of Osage Marine Services, Inc.*, 2012 WL 709188 (E.D.Mo., Mar. 5, 2012), cited by Plaintiff, the court denied a motion for judgment on the pleadings that plaintiff could not recover punitive damages on an unseaworthiness claim, reasoning that under the approach articulated in *Atlantic Sounding*, punitive damages are available on such claims because: 1) unseaworthiness is a general maritime action that was well established before the passage of the Jones Act; 2) punitive damages were well established as a remedy in general maritime law before the passage of the Jones Act; and 3) neither the Jones Act nor any other federal statute has addressed or limited the availability of punitive damages for unseaworthiness claims.

Similarly, in *Barrette v. Jubilee Fisheries, Inc.*, the court concluded that a seaman's wife could recover for loss of consortium on an unseaworthiness claim even though the Jones Act does not provide for such a remedy.  2011 WL 3516061 (W.D. Wash. Aug. 11, 2011).  In reaching this

20

conclusion, the court followed the approach set forth in *Atlantic Sounding*, concluding that because both unseaworthiness and loss of consortium were recognized by general maritime law since before the enactment of the Jones Act and because the Jones Act does not preclude recovery for loss of consortium, that remedy is available on an unseaworthiness claim.  *Id*. at *5-6.

Finally, in *Wagner v. Kona Blue Water Farms, L.L.C.*, a district court addressed whether the Ninth Circuit's decision in *Evich*  is good law, in light of *Miles* and *Atlantic Sounding*, on the question of the availability of punitive damages on an unseaworthiness claim.  2010 WL 3566731 (D. Hawai'i, Sept. 13, 2010).  That court reviewed the reasoning of *Evich*, *Miles* and *Atlantic Sounding* and concluded as follows:

> Here, as in [*Atlantic Sounding*], there is no suggestion that a federal statute has displaced the general maritime rule concerning unseaworthiness. Unseaworthiness is a general maritime cause of action that was well established before the passage of the Jones Act. *Sieracki*, 328 U.S. at 91, 92 n. 9; *Mahnich*, 321 U.S. at 99. Additionally, punitive damages were well established as a remedy in general maritime law actions before the passage of the Jones Act. [*Atlantic Sounding*], 129 S.Ct. 2566–69, 2572 (discussing the history of punitive damages and the extension of punitive damages to claims arising under federal maritime law) (citing *Lake Shore & Mich. S.R. Co. Ry. Co. v. Prentice*, 147 U.S. 101, 108 (1893); *The Amiable Nancy*, 3 Wheat. 546 (1818)) (additional citations and quotations omitted).  Finally, unlike the wrongful death claim at issue in *Miles*, the Jones Act did not address unseaworthiness or its remedy.
> . . .
>
> Thus, although cases predating [*Atlantic Sounding*] consistently interpreted *Miles* to bar punitive damages for general maritime law claims including unseaworthiness, e.g. *Guevara*, 34 F.3d at 1284; *La Voie*, 797 F.Supp. at 831, [*Atlantic Sounding*] suggests that such interpretations of *Miles* are "far too broad."[*Atlantic Sounding*], 129 S.Ct. at 2572. Specifically, [*Atlantic Sounding*] held that *Miles* does not limit recovery in general maritime actions to the remedies available by statute. *Id*. [*Atlantic Sounding*] therefore reinforces *Evich*'s conclusion that "[w]hile punitive damages are not available under the Jones Act, it does not follow that they are unavailable under general maritime law." *Evich*, 819 F.2d at 258. Accordingly, the court finds that *Evich* is not clearly irreconcilable with *Miles*.

*Id*. at * 5-6.

United States District Court
Northern District of California

#### f.      Whether *Miles* is "Clearly Irreconcilable" with *Evich*

Unless *Miles* is "clearly irreconcilable" with *Evich*, this Court is bound to follow the Ninth Circuit's holding in *Evich* that punitive damages are available on a claim for unseaworthiness. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).  This Court agrees with the *Wagner* court that *Miles* is not clearly irreconcilable with *Evich* and therefore, that it is bound by the holding of *Evich* that punitive damages may be recovered on a claim for unseaworthiness.

First, as discussed above, in *Mahnich v. Southern S. S. Co.*, 321 U.S. 96, 99 (1944), the Supreme Court made clear that unseaworthiness has been an established cause of action in general maritime law at least since 1903, when the Supreme Court recognized the existence of such a claim in *The Osceola*, 189 U.S. 158 (1903).  Second, it is well-established that punitive damages were historically available in general maritime law before the enactment of the Jones Act.  *See Atlantic Sounding*, 557 U.S. at 404 (noting that the "common-law punitive damages tradition extends to claims arising under federal maritime law" and in this country dates back at least to 1818, when the Supreme Court held that punitive damages were available for maritime trespass).  Third, nothing in the Jones Act suggests that Congress intended to limit the availability of punitive damages on unseaworthiness claims when it enacted the Jones Act.

The Court rejects Hornblower's assertion that a contrary result is required because in *Miles* the Supreme Court characterized its *Mahnich* decision as amounting to a "revolution in the law" as to the unseaworthiness cause of action.  *See Miles*, 498 U.S. at 25-26.  The "revolution" discussed in *Miles* was a shift to strict liability from liability based on an owner's failure to act with due diligence in maintaining the seaworthiness of a vessel.  But while the *Mahnich* decision may have represented a shift in the requirements for establishing unseaworthiness, that decision was *grounded* in general maritime law that predated the Jones Act.  Further, nothing in *Miles* suggests that a cause of action for unseaworthiness did not exist before the Jones Act, even if the theory of liability underpinning such a claim may have evolved.  As the Court recognized in *Atlantic Sounding*, even where a claim is new in a "technical sense," the court may recognize such a claim where the change in the law is "logically compelled by our precedents."  404 U.S. at 421.

22

United States District Court
Northern District of California

The Court also rejects Hornblower's assertion that punitive damages were not available on unseaworthiness claims prior to 1920 and therefore are not available now.  Under *Atlantic Sounding,* the more significant question is whether punitive damages were available *generally* on maritime claims when the Jones Act was adopted.   Thus, in *Miles*, the Court cited to an 1818 case awarding punitive damages on a maritime *trespass* claim – not a maintenance and cure claim – to show that punitive damages have long been "extended to claims arising under federal maritime law."  557 U.S. at 411.   The court went on to cite lower court cases involving "maritime actions for tortious acts of a particularly egregious nature" decided before 1920, but, notably, did not cite *any* cases in which a court expressly held that punitive damages were available on a claim for maintenance and cure.  *See id*. at 414 & n.3.  Rather, the Court only cited two lower court cases involving maintenance and cure claims in which "scholars have characterized the awards authorized by these decisions as such."  *Id*.  Indeed, the Court acknowledged that while there were many judicial pronouncements regarding the availability of punitive damages on maritime claims, such awards "were rarely upheld on judicial review."  *Id*. at 412 n. 2.  Nonetheless, the Court explained that "that fact does not draw into question the basic understanding that punitive damages were considered an available maritime remedy."  *Id*.   On that basis, the Court found that the availability of punitive damages on maintenance and cure claims was established prior to the Jones Act.

Finally, the Court rejects Hornblower's argument that the remedies afforded under general maritime law on an unseaworthiness claim cannot be more expansive than the remedies provided under the Jones Act.  Hornblower's position is directly contradicted by the Supreme Court's recognition in *Atlantic Sounding* that the Jones Act was remedial and was intended to enlarge the protections available to seamen, not narrow them.  557 US at 417.  Thus, its enactment did not eliminate preexisting remedies available to seamen under general maritime law, except to the extent specific provisions expressly restricted the traditional remedies available.  There are no provisions in the Jones Act that limit the right to seek punitive damages on a claim for unseaworthiness.  Therefore, the Court concludes that *Evich* is not clearly irreconcilable with *Miles* and *Atlantic Sounding*.

Accordingly, the Court concludes that punitive damages are available on Plaintiff's unseaworthiness claim.

### 2.    Jones Act Claim

The parties do not dispute that punitive damages are not available on a Jones Act negligence claim and Plaintiff stipulated at the Motion hearing that he is not seeking such damages.  Therefore, to the extent Plaintiff's request for punitive damages might be construed to include a request for punitive damages under the Jones Act, that request is stricken.

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part.  In particular, to the extent that Plaintiff's claims for unseaworthiness and Jones Act negligence are based on the events that occurred on the M/V Sunset, those claims are dismissed.  In addition, Plaintiff's request for punitive damages under the Jones Act – to the extent that his request for punitive damages could be construed to include such a request – is stricken.  In all other respects, the Motion is DENIED.

IT IS SO ORDERED.


Dated:  November 16, 2012


_____
Joseph C. Spero
United States Magistrate Judge